BERVEN COMPANY, Plaintiff
and Respondent,

v.

Betty J. NEWMAN, Defendant
and Appellant.

No. 12386.

Supreme Court of South Dakota.

Argued March 15, 1979.

Decided July 11, 1979.

Rehearing Denied Aug. 15, 1979.

Thomas J. Green of Loucks, Oviatt, Bradshaw, Green & Schulz, Watertown, for plaintiff and respondent.

J. Douglas Austin of Austin, Hinderaker & Hackett, Watertown, for defendant and appellant.

HENDERSON, Justice.

## PARTIES

The plaintiff-respondent, Berven Company, brought suit in Codington County against the defendant-appellant, Betty J. Newman. For convenience and clarity, the parties will be referred to as Berven Company and Newman.

## ACTION

Berven Company sued to recover a commission allegedly due under a contract entered into between the parties to sell Newman's real estate. The action was tried to the court and the trial judge awarded Berven Company a $12,400 commission under the theory that the parties had a valid bilateral contract. This award totaled the commission specified in the contract.

## FACTS

Newman owned the A & W Drive-Inn in Watertown. After her attempts at selling it proved futile, she contacted the Berven Company, a licensed real estate agency. Before the listing was entered into, the Berven Company immediately began compiling information about the A & W: they inspected the property; they acquired profit-loss statements and sales projections; they contacted A & W about franchises; and they performed other preliminary work. On the late afternoon of July 15, 1976, Newman, after consulting her attorney and one of Berven Company's realtors about the contract, signed the listing agreement. The realtor specifically explained the consequences of the exclusive right to sell provision to Newman. The pertinent portions of the contract provide:

This is a Binding Contract
## AN EXCLUSIVE LISTING AGREEMENT

For and in consideration of the mutual covenants and conditions, herein contained, Berven Company, hereinafter referred to as the "Agent", does hereby agree to use its best efforts, through its personnel, through advertising and through other brokers, which it may select, to sell the real property hereinafter described, and I (we) hereby list with said Agent, exclusively and irrevocably, the following described property, situated in the City of *Watertown* County of *Codington* State of South Dakota, to-wit:

\* \* \* \* \* \*

for a gross sales price of $ *One hundred sixty thousand and no/100 $160,000.00* Dollars and to accept a deposit thereof, and hold said deposit in Agent's real estate trust account until date of closing. This Exclusive Listing Agreement shall expire and terminate as of *NOON 12* o'clock *p.* M. on *JANUARY 15, 197 6.* [Defendant admitted this should have read "1977".]

I hereby agree to pay my Agent as fee *TWELVE THOUSAND FOUR HUNDRED DOLLARS $ 12,400.00* of the selling price, when a purchaser is procured at the stated price and terms, or at any other price and terms acceptable to me. In the event of any sale or exchange within the time covered by this listing, or within ninety days subsequent to the expiration of this listing agreement, to any party with whom my Agent has had contact, the terms and conditions of this agreement shall apply.

\* \* \* \* \* \*

This agreement gives to my Agent the sole and exclusive right to sell the property described. If said property is sold during the term of this agreement, at a price and upon terms acceptable to me, to a purchaser procured by me or by other Agents or Agencies, or by any other party whomsoever, I agree to pay the Agent designated in this agreement, forthwith

the amount of commission provided herein.

After the listing agreement was entered into, Berven Company contacted between five and seven buyers, set up a "homework kit," took approximately thirty-six snapshots, made two long-distance phone calls, talked to Newman's son about operating procedures and made inquiries regarding the transfer of this A & W franchise. This activity occurred between July 15 and July 19, 1976.

On July 19, 1976, Newman's attorney contacted the Berven Company. Newman's attorney expressed that she had procured a buyer through her own efforts and wished to cancel the contract. A letter of revocation was mailed the same day by her attorney to the Berven Company. On August 4, 1976, Newman signed a formal agreement selling the A & W for $140,000. Berven Company, relying on the terms of the exclusive listing agreement, brought suit to recover the $12,400 commission provided for in the contract.

## ISSUES

Newman raises two issues on appeal. The first issue she presents is whether her revocation was wrongful, thus entitling Berven Company to receive the commission specified in the listing agreement. Newman maintains that in a real estate transaction such as this, the case of *Beck v. Howard,* 43 S.D. 179, 178 N.W. 579 (1920) is controlling. She interprets the case to say that the principal is given the power to revoke the agent's authority unless the agent has secured an option to purchase the property, in addition to securing the listing agreement. Berven Company argues that the terms of the contract militate against such an agency rule.

The second issue raised by Newman deals with whether there is consideration to support Berven Company's demand for its commission. Newman claims that Berven Company failed to perform substantial services prior to revocation causing a lack of consideration.

## DECISION

■ Newman's reliance on *Beck v. Howard,* supra, is misplaced. The contract in this case differs from that in Beck. In that case, "[t]he written instrument . . . merely authorize[d]s plaintiffs to sell or find a purchaser for the property, and was therefore revocable at any time before the plaintiffs had fully executed the power conferred." *Beck v. Howard,* 43 S.D. at 184, 178 N.W. at 581. There the court dealt with an exclusive agency situation under which the owner could sell without liability. The terms of such a listing agreement provide that for a stated period the owner will not deal through other brokers, yet he may sell the property himself without liability. *Tetrick v. Sloan,* 170 Cal.App.2d 540, 339 P.2d 613 (1959).

In this action, as in *American Property Services v. Barringer,* 256 N.W.2d 887 (S.D. 1977), deemed to be controlling law for this case, we are dealing with an exclusive right to sell. The owner of the property is precluded from selling the property during the stated terms without paying the brokerage commission. *Tetrick v. Sloan,* supra. By its terms, the listing agreement in front of us is a bilateral contract wherein Newman contracted away her right to sell her A & W. The exercise of her power to revoke by making an unassisted sale terminated the broker's authority but did not dissipate her contractual obligation to pay the broker's commission. In *American Property Services v. Barringer,* supra, the broker did not procure a purchaser and the owner was still held liable for the commission.

Generally, there are three types of brokerage listings:

1.  The general listing. Such is revocable at the will of the owner in good faith at any time before performance, regardless of the efforts expended by the broker. Such a listing leaves the owner free to list his property with other brokers, to sell it himself, or to withdraw it from the market.

2.  The exclusive agency. Terms are inserted in the listing which provide

that for a stated period the owner will not deal through other brokers, yet he may sell the property himself without liability.

3. The exclusive right to sell. This type of agency even precludes the owner himself from selling the property during the stated terms without paying the brokerage commission.

■ The consideration for this bilateral contract consists of Berven Company's promise to use its best efforts to sell the property and Newman's contracting away of her right to sell her property. There was no want of consideration. At the top of the contract appears a recitation which states: "For and in consideration of the mutual covenants and conditions, . . . ." SDCL 53–6–3 provides: "A written instrument is presumptive evidence of a consideration." The contract in *American Property Services v. Barringer,* supra, in a footnote contained a similar recitation of consideration. This court stated:

> The listing agreement is, *by its terms,* a bilateral contract, the defendant granting an "exclusive right to sell" in return for the plaintiff's promise of reasonable efforts to secure a purchaser. Williston on Contracts, Third Edition, Section 1287A; 12 Am.Jur.2d, Brokers, § 231.

256 N.W.2d at 889 n. 1 (emphasis by the court).

The proper law to be applied is found in SDCL 53–6–4, which states: "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." Newman, having the burden of showing a want of consideration, fell short in meeting the requisite burden of proof. In addition, there was no failure of consideration. During the limited time span of four days, Berven Company functioned with dispatch. Between the period of signing and revocation, Berven Company acted diligently under its listing.

When the property was eventually sold on August 4, 1976, Berven Company became entitled to its fees according to the agreement. The judgment is affirmed.

WOLLMAN, Chief Justice, MORGAN and FOSHEIM, JJ., concur.

DUNN, Justice, dissents.

DUNN, Justice (dissenting).

I would void this contract and all like it as being unconscionable and remand the case for the purpose of determining the fair compensation due the Berven Company for its three-day efforts.